**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION**

| | |
|---|---|
| TREMAINE RHINES, individually and on behalf of all similarly situated individuals,<br><br>Plaintiff,<br><br>INDIANA PACKERS CORPORATION,<br><br>Defendant. | Case No.: 4:22-cv-57<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

COMES NOW Plaintiff, TREMAINE RHINES by and through his undersigned attorneys, and hereby brings this Collective and Class Action Complaint against Defendant, INDIANA PACKERS CORPORATION, and states as follows:

**INTRODUCTION**

1. This is a class and collective action brought by Plaintiff on behalf of himself and all similarly situated current and/or former Associate Production employees of Defendant to recover for Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and alleged contractual obligations (or unjust enrichment if no contract is found), and other appropriate rules, regulations, statutes, and ordinances.

2. Defendant subjected Plaintiff, and those similarly situated, to Defendant's policy and practice of failing to compensate its production floor employees for their necessary donning, doffing, and equipment preparation work, which resulted in the failure to properly compensate them as required under applicable federal and state laws.

3. Plaintiff seeks a declaration that his rights, the rights of the FLSA Collective Class, and the rights of the Rule 23 Class were violated and seeks to recover an award of unpaid wages and overtime premiums, liquidated damages, penalties, injunctive and declaratory relief, attorneys'

fees and costs, pre- and post-judgment interest, and any other remedies to which he and the putative Classes may be entitled.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the FLSA, 29 U.S.C. §§ 201, *et seq*.

5. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims within this Court's original jurisdiction that they form a part of the same case or controversy.

7. Upon information and belief, Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. *See* 29 U.S.C. § 203(s)(1)(A).

8. This Court has personal jurisdiction over Defendant because it maintains offices in the State of Indiana.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business within this District, and because a substantial portion of the events that give rise to the claims pled in the Complaint occurred in this District.

## PARTIES

10. Plaintiff is an individual who resides in the County of Tippecanoe, City of Lafayette, Indiana. Plaintiff worked for Defendant as an Associate Production from May 2019 to

January 2020. From January 2020 to January 2021, Plaintiff held the position of Driver and did not work on the production floor. Plaintiff executed his Consent to Sue form, attached hereto as Exhibit A.

11. Defendant is a Delaware corporation with its principal place of business in Indiana.

12. Defendant is "a fully integrated retail, foodservice, and private label producer of fresh and processed meats." *See* Job Postings, attached hereto as Exhibit B. Defendant employs Associate Production employees to skin, trim, cut, debone, process, package, and box meat products. *See id.*

13. Defendant operates meat processing facilities in Delphi, Indiana; Frankfort, Indiana; Holland, Michigan; and Owensboro, Kentucky.

14. Upon information and belief, Defendant employs over 2,000 individuals at its Delphi, Indiana facility.

15. Defendant may accept service via its registered agent The Prentice-Hall Corporation System, Inc. at 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

## GENERAL ALLEGATIONS

16. Defendant is a member of a highly regulated industry and is subject to the scrutiny of federal and state food safety and health regulations, as well as occupational work safety agencies and administrative regulations, which require, among other things, that Defendant provide proper controls to ensure worker and consumer safety and the means for workers to protect themselves from the dangers presented by their jobs.

17. Defendant employed Plaintiff as an hourly Associate Production ("AP"). Defendant assigns APs, like Plaintiff, to handle and process meat in a safe and secure environment for eventual sale to Defendant's customers.

18. Plaintiff's primary job duties included skinning, trimming, cutting, and deboning pork products.

19. Throughout Plaintiff's employment with Defendant, Plaintiff regularly worked at least 40 hours per workweek.

20. Regardless of whether Defendant scheduled Plaintiff to work a workweek totaling under 40 hours, a workweek totaling 40 hours, or a workweek totaling in excess of 40 hours, Plaintiff regularly worked a substantial amount of time off-the-clock as part of his job duties as an AP. Defendant never compensated Plaintiff for this necessary time worked off-the-clock.

21. 29 C.F.R. § 553.221 provides:

> Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace, as well as all other time during which the employee is suffered or permitted to work for the employer. Such time includes all pre-shift and post-shift activities which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity, such as attending roll call, writing up and completing tickets or reports, and washing and re-racking fire hoses.

22. 29 C.F.R. § 790.8 states "[a]mong activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance."

### A. Unpaid Equipment and Tool Preparation Work.

23. Defendant tasked Plaintiff with processing and packaging meat products with Defendant's personal protective equipment and tools that protected Plaintiff from the strenuous and dangerous work conditions at Defendant's meat processing facility and were required to complete the work.

24. Before Plaintiff, and all other current and/or former APs, can enter the production floor and start processing and packaging meat products, they must wait in line and then don a protective metal vest, a smock, affix a helmet and face shield, attach a knife belt around their waists, and put on gloves.

4

25. Plaintiff, and all other current and/or former APs, must also ensure that their knives are sharpened, and if not, sharpen their knives before entering the production floor.

26. Defendant does not compensate Plaintiff, and all other current and/or former APs, until after they have completed donning all required personal protective equipment and prepared their tools.

27. Once Plaintiff, and all other current and/or former APs, have donned all required personal protective equipment and prepared their tools, Defendant requires its employees to clock-in through an electronic timeclock before entering the production floor.

28. The equipment and tool preparation work regularly took 15 minutes per shift, or more if issues arose. Defendant did not compensate Plaintiff for this work.

29. Regardless of how long the equipment and tool preparation work takes, Defendant did not allow Plaintiff, and all other current and/or former APs, to clock in until they donned the necessary equipment and prepared the necessary tools to enter the production floor.

30. Defendant mandated Plaintiff, and all other current and/or former APs, to wear and use the required equipment and tools while on the production floor. Any AP not wearing the required equipment and tools on the production floor was subject to disciplinary action.

31. The equipment and tool preparation work Plaintiff, and all other current and/or former APs, must complete before they begin being compensated is the same regardless of which meat processing facility they worked at. The equipment and tool preparation work is integral and indispensable to the performance of Plaintiff's principal job duties and integral and indispensable to Defendant's business.

32. Thus, the unpaid equipment and tool preparation work performed by Plaintiff, and all other current and/or former APs, directly benefits Defendant.

### B. Unpaid Equipment and Tool Return Work.

33. Defendant required Plaintiff, and all other current and/or former APs, to first clock out of the timekeeping system after leaving the production floor, then spend time waiting in line before proceeding to remove and return their equipment and tools which included their gloves, helmet, face shield, knife belt, smock and protective metal vest.

34. All equipment and tools must be removed onsite for worker safety and Plaintiff, and all other current and/or former APs could not leave Defendant's facilities without removing and returning their equipment and tools.

35. All equipment and tools must be returned to Defendant for cleaning and sanitation for worker and consumer safety and to prepare the equipment and tools for the next shift.

36. This equipment and tool return work regularly took up to 15 minutes per shift, or more if issues arose. Defendant did not compensate Plaintiff for this work.

37. The equipment and tool return work performed by Plaintiff, and all other current and/or former APs, was integral and indispensable to the primary job duties of Defendant's APs and directly benefited Defendant.

### C. Meal Breaks.

38. Defendant required Plaintiff, and all other current and/or former APs, to don and doff the required equipment and tools while on their unpaid meal breaks.

39. Defendant required Plaintiff, and all other current and/or former APs, to first clock out of the timekeeping system after leaving the production floor, then spend time waiting in line before proceeding to remove their equipment and tools which included their gloves, helmet, face shield, knife belt, smock and protective metal vest so that they could take their unpaid meal break.

40. Defendant then required Plaintiff, and all other current and/or former APs, to first don their necessary equipment and tools before clocking into the timekeeping system from their unpaid meal break.

41. Defendant staggered the meal break periods for APs, which meant that the amount of time required to wait in line to don and doff equipment and tools was less than the beginning or end of a shift.

42. The donning and doffing of the required equipment and tools while on break took up to 10 minutes per shift, or more if issues arose. Defendant did not compensate Plaintiff for this work.

43. The donning and doffing of equipment and tools performed by Plaintiff, and all other current and/or former APs, was integral and indispensable to the primary job duties of Defendant's APs and directly benefited Defendant.

**D.      *Defendant's Policy and Practice of Off-the-Clock Work Violates Federal Law.***

44. At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former APs, to routinely perform off-the-clock equipment and tool preparation work by not compensating its employees until after they completed the equipment and tool preparation work.

45. At all times relevant, Defendant suffered or permitted Plaintiff, and all other current and/or former APs, to routinely perform off-the-clock equipment and tool return work by stopping compensation to its employees before completion of the equipment and tool return work.

46. Defendant knew or should have known that it must pay its employees for all compensable time throughout the workweek. *See* 29 C.F.R. §§ 553.221, 790.8, 785.19(a).

47. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former APs, for their compensable equipment and tool preparation and return work performed in any amount.

48. Defendant knew, or should have known, that the FLSA, 29 U.S.C. § 207, requires Defendant to compensate non-exempt employees who work in excess of 40 hours in a workweek at a rate of one and one-half times their regular rate of pay—including the compensable equipment and tool preparation and return work performed.

49. Despite this, Defendant failed to compensate Plaintiff, and all other current and/or former APs, for their equipment and tool preparation and return work performed in excess of 40 hours in a workweek at one and one-half times their regular rates of pay.

50. For example, during the week of October 6, 2019 to October 12, 2019, Defendant paid Plaintiff for work. However, the hours Defendant paid Plaintiff did not include the equipment and tool preparation and return work as alleged herein. Had Defendant properly paid Plaintiff for all hours worked during this week, then it would have paid him additional overtime wages equal to the uncompensated equipment and tool preparation and return work.

51. Defendant is aware of each and every workweek Plaintiff was scheduled and worked for more than 40 hours because Defendant's own payroll records reflect the number of hours it paid Plaintiff.

52. Defendant is aware of Plaintiff's regular hourly rate for each and every workweek Plaintiff worked because Defendant's own payroll records reflect the hourly rate it paid Plaintiff. For example, Plaintiff's hourly rate for the exemplar week noted above was approximately $18.47 per hour.

53. In reckless disregard of the FLSA, Defendant adopted and then adhered to its policy, plan, or practice of employing Plaintiff, and all other current and/or former APs, to perform compensable equipment and tool preparation and return work off-the-clock. This illegal policy,

plan, or practice caused incorrect payments for all straight time and overtime performed by Plaintiff, and all other current and/or former APs, in violation of the FLSA.

### E. Recordkeeping.

54. Further, 29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair Labor Standards Act" to maintain employee records.

55. Federal regulations mandate each employer to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. *See* 29 C.F.R § 516.2.

56. Upon information and belief, Defendant failed to establish, maintain, and preserve accurate timesheet and payroll records for all hours worked by Plaintiff as required by the FLSA because it failed to include the off-the-clock equipment and tool preparation and return work on Plaintiff's and all other current and/or former APs' payroll records.

57. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) controls. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

58. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to

complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

## COLLECTIVE ACTION ALLEGATIONS

59. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) individually and on behalf of:

> *All current and former Associate Production employees, and/or other job titles performing the same or similar job duties, who worked for Indiana Packers Corporation at any time in the last three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

60. Plaintiff does not bring this action on behalf of any executive, administrative, or professional employees exempt from coverage under the FLSA.

61. *29 U.S.C. § 216(b) Conditional Certification "Similarly Situated" Standard:* With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the meat processing employees described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan (namely, Defendant's practices, policies, or plan of not paying its AP employees for their compensable work performed in excess of 40 hours per workweek at an overtime premium of at least one and one-half times their regular rates of pay); (c) their claims are based upon the same legal theories; and (d) the employment relationship between Defendant and every putative FLSA Collective member is exactly the same, and differs only by name, location, and rate of pay.

62. Upon information and belief, Plaintiff estimates the FLSA Collective, including both current and former meat processing employees over the relevant period, will include several

hundred members who would benefit from the issuance of court-supervised notice of this action and the opportunity to join it. The precise number of the FLSA Collective members should be readily available from a review of Defendant's personnel, scheduling, time, and payroll records; and from input received from the FLSA Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

63. Plaintiff shares the same interests as the FLSA Collective members in that the outcome of this action will determine whether they are entitled to unpaid overtime compensation, interest, attorneys' fees and costs owed under the FLSA. Because the facts in this case are similar, if not altogether identical, and the factual assessment and legal standards lend themselves to a collective action.

## BREACH OF CONTRACT CLASS ACTION ALLEGATIONS[1]

64. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a putative Class defined to include:

> *All current and former Associate Production employees, and/or other job titles performing the same or similar job duties, who worked for Indiana Packers Corporation at any time in the last three years.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

65. *Numerosity:* The members of the Rule 23 Class are so numerous that joinder of all members in the case would be impracticable, and the disposition of their claims as a Class will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel and payroll records.

---

[1] To the extent the Court finds, or Defendant argues, the employment relationship between itself and its APs did not form a contract, Plaintiff reserves the right to seek Rule 23 class certification under Plaintiff's and the Rule 23 Class' quasi-contract claims (Count III).

66. *Commonality/Predominance:* There is a well-defined community of interest among Rule 23 Class members and common questions of both law and fact predominate in the action over any questions affecting individual members. These common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant offered to pay Plaintiff and the Rule 23 Class certain rates (depending on the technical job titles) per hour for each hour worked as meat processing employees;

   b. Whether Plaintiff and the Rule 23 Class accepted Defendant's offer by performing the essential functions of the job;

   c. Whether Defendant breached the contract by failing to pay Plaintiff and the Rule 23 Class for each and every hour worked; and

   d. Whether Plaintiff and the Rule 23 Class were damaged.

67. *Typicality:* Plaintiff's claims are typical of those of the Rule 23 Class in that Plaintiff and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from Defendant's same policies, practices, and course of conduct as all other Rule 23 Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Rule 23 Class members: whether Defendant and the Rule 23 Class members were employed under an implied contract to be paid for each and every hour worked by Defendant.

68. *Adequacy:* Plaintiff will fully and adequately protect the interests of the Rule 23 Class and Plaintiff retained national counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

69. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount

of damages at stake for each individual along with the fear of reprisal by their employer. Given the material similarity of the Rule 23 Class members' claims, even if each Rule 23 Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of thousands of identical actions. Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Rule 23 Class' claims, create significant economies of scale for the Court and the parties, and result in a binding, uniform adjudication on all issues.

70. The case will be manageable as a class action. This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Rule 23 Class within that group a separate opt-out notice pertaining to their rights under the common law. Plaintiff and their counsel know of no unusual difficulties in the case and Defendant has payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease. Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

### COUNT I

**VIOLATION OF THE FAIR LABOR STANDARDS ACT,
29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME WAGES
(FLSA Collective Class)**

71. Plaintiff re-alleges and incorporates all previous paragraphs herein.

72. At all times relevant to this action, Defendant was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.

73. Defendant is engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

74. At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

75. Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

76. The position of Associate Production is not exempt from the FLSA.

77. Defendant's other job titles performing similar meat processing job duties are not exempt from the FLSA.

78. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him within the meaning of the FLSA, 29 U.S.C. § 203(g).

79. The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of 40 hours per workweek. *See* 29 U.S.C. § 207.

80. Defendant violated the FLSA by failing to pay Plaintiff the federally mandated overtime premium for all hours worked in excess of 40 hours per workweek.

81. Upon information and belief, Defendant has corporate policies of evading overtime pay for its hourly workers.

82. Defendant's violations of the FLSA were knowing and willful.

83. By failing to compensate its hourly workers at a rate not less than one and one-half times their regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a). All similarly situated APs, or other job titles performing the same or similar job duties, are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate. This uniform policy, in violation of the FLSA, has been, and continues to be, applied to APs, or other job titles performing the same or similar job duties, who have worked or are working for Defendant in the same or similar position as Plaintiff.

84. None of the provisions of the FLSA can be contravened, set aside, abrogated, or waived by Plaintiff or the Class.

85. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to their unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

## COUNT II

**BREACH OF CONTRACT**
**(Breach of Contract Class Action)**

86. Plaintiff and the Rule 23 Class re-allege and incorporate all previous paragraphs herein and further allege as follows.

87. Plaintiff and the Rule 23 Class were hired at various times. Defendant offered to pay Plaintiff and the Rule 23 Class certain rates per hour for each hour worked as an AP. Each Rule 23 Class members' contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of their regular business activities.

88. Plaintiff and the Rule 23 Class accepted the offer and worked for Defendant as an AP, and/or other job titles performing the same or similar job duties.

89. Plaintiff and the Rule 23 Class also accepted the offer by their performance—i.e., reporting for work and completing the tasks assigned to them.

90. Plaintiff's duties, and the duties of the Rule 23 Class, required equipment and tool preparation and return work.

91. Plaintiff and every other Rule 23 Class member performed under their contract by doing their jobs in addition to carrying out the off-the-clock duties Defendant required.

92. Upon information and belief, Defendant does not compensate its APs, and/or other job titles performing the same or similar job duties, until after the equipment and tool preparation work is complete.

93. Upon information and belief, Defendant does not compensate its APs, and/or other job titles performing the same or similar job duties, after they clock-out and perform the equipment and tool return work.

94. Despite being required to complete this integral equipment and tool preparation and return duties, Plaintiff and the Rule 23 Class were not compensated at their hourly rate for their work performed.

95. By failing to pay Plaintiff and the Rule 23 Class for the equipment and tool preparation and return work Defendant breached its contract with Plaintiff and the Rule 23 Class to pay their hourly rate for each hour worked.

96. Defendant breached its duty to keep accurate records and to keep track of the time Plaintiff and other Rule 23 Class members spent performing equipment and tool preparation and return work, which is a fundamental part of an employer's job.

97. In sum, the facts set forth above establish the following elements and terms of the contract:

    a. Offer: a set hourly rate for each hour worked as an AP;

    b. Acceptance: Plaintiff and the Rule 23 Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by Defendant);

    c. Breach: Defendant did not pay Plaintiff and the Rule 23 Class for each hour (or part thereof) worked; and

    d. Damages: By failing to pay Plaintiff and the Rule 23 Class their hourly rate for each hour worked, Plaintiff and the Class were damaged in an amount to be determined at trial.

98. These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of contracts is substantially similar throughout the United States.

99. As a direct and proximate cause of Defendant's breach, Plaintiff and the Rule 23 Class were damaged in an amount to be proven at trial.

## COUNT III

### QUASI-CONTRACTUAL REMEDIES: UNJUST ENRICHMENT
### (Unjust Enrichment Class)

100. Plaintiff and the Rule 23 Class re-allege and incorporate all previous paragraphs herein and further allege as follows.

101. Upon information and belief, Plaintiff's and every other Rule 23 Class members' equipment and tool preparation and return work—which is integral and indispensable to their principal activities as an AP—provided valuable work and income for Defendant; namely, compensation to Defendant for completing meat processing activities that directly benefited Defendant.

102. Equipment and Tool Preparation Work: Plaintiff and the Rule 23 Class were unable to perform any job function without waiting in line to don a protective metal vest, a smock, affix

a helmet and face shield, attach a knife belt around their waists, put on gloves, and sharpen their knives. In short, to start their work of meat processing precisely at their designated start time, Plaintiff and the Rule 23 Class worked off-the-clock before their shift began. Without the equipment and tool preparation work, Plaintiff and the Rule 23 Class were unable to process meat at their designated start time. Further, upon information and belief, Defendant does not compensate its APs until after the equipment and tool preparation work is complete.

103. Equipment and Tool Return Work: Plaintiff and the Rule 23 Class were unable to complete their job function without waiting in line to doff a protective metal vest, a smock, remove a helmet and face shield, remove a knife belt around their waists, and remove gloves. In short, to end their work of meat processing at precisely their scheduled shift end time, Plaintiff and the Rule 23 Class worked off-the-clock after their shift to return the required equipment and tools. Without the equipment and tool return work, Plaintiff and the Rule 23 Class were unable to process meat up to their scheduled shift end time. Further, upon information and belief, Defendant stops compensating APs after they leave the production floor and before the equipment and tool return work is complete.

104. As part of their ongoing employment relationships with Defendant, Plaintiff and other Rule 23 Class members expected to be paid wages for the time they spent doing their jobs, including performance of the necessary equipment and tool preparation and return work performed each shift.

105. By not paying Plaintiff and other Rule 23 Class members for the time they spent performing necessary equipment and tool preparation and return work, Defendant was, and continues to be, unjustly enriched at the expense of Plaintiff and the Rule 23 Class in an amount to be determined at trial.

106. By not paying Plaintiff and other Rule 23 Class members for the time they spent performing necessary activities, Defendant also saved, and continues to save, itself hundreds-of-thousands of dollars in unpaid payroll taxes—taxes that would have otherwise been credited to Plaintiff's and Rule 23 Class members' benefit.

107. It would be unjust and inequitable to allow Defendant to retain the benefit of the work performed by Plaintiff and the Rule 23 Class without compensation.

108. These claims are appropriate for nationwide class certification under Rules 23(b)(3) and/or (c)(4) because the law of unjust enrichment is substantially similar throughout the United States.

109. As a direct and proximate cause of Defendant's unjust enrichment, Plaintiff and the Rule 23 Class were harmed at an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

    a. An Order certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

    b. An Order certifying this action as a class action (for the Rule 23 Breach of Contract Rule 23 Class or for the Rule 23 Unjust Enrichment Rule 23 Class if no contract is found) pursuant to Rule 23 of the Federal Rules of Civil Procedure;

    c. An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all those individuals who are similarly situated, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential class members of their rights under this litigation;

    d. An Order designating the Named-Plaintiff to act as the Rule 23 Class Representative on behalf of all similarly situated individuals for both the FLSA and the Rule 23 Breach of Contract or Unjust Enrichment Rule 23 Classes;

e. An Order declaring that Defendant willfully violated the FLSA and its attendant regulations as set forth above;

f. An Order declaring that Defendant violated its obligations under the FLSA;

g. An Order granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid minimum wages, and overtime pay calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of 40 hours per week;

h. An Order awarding liquidated damages to Plaintiff, in an amount equal to the amount of unpaid wages found owing to Plaintiff under the FLSA;

i. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action;

j. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k. An Order awarding such further relief as this court deems appropriate.

## JURY DEMAND

NOW COMES Plaintiff, by and through his undersigned attorneys, and hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: August 29, 2022                                            Respectfully submitted,

s/Robert T. Dassow_____
LOCAL COUNSEL

*Local Counsel for Plaintiff*

Jacob R. Rusch (MN Bar No. 0391892)*
Zackary S. Kaylor (MN Bar No. 0400854)*
**JOHNSON BECKER, PLLC**
444 Cedar Street, Suite 1800
Saint Paul, MN 55101
T: 612-436-1800
F: 612-436-1801
E: jrusch@johnsonbecker.com
E: zkaylor@johnsonbecker.com

*Lead Attorneys for Plaintiff*Pro Hac Vic forthcoming*